(40 P.3d 336)

No. 87,365

PRAIRIE STATE BANK, *Appellant*, v. SUPERIOR HOUSING, INC., *et al.*, *Defendants*, and DEUTSCHE FINANCIAL SERVICE CORPORATION, *Appellee*.

Opinion filed February 15, 2002.

*Michael G. Coash*, of El Dorado, for appellant.

*Christopher A. McElgunn*, of Klenda, Mitchell, Austerman & Zuercher, L.L.C., of Wichita, for appellee.

Before ELLIOTT, P.J., GERNON and GREEN, JJ.

GREEN, J.: Prairie State Bank (Prairie State) appeals from the trial court's judgment determining that Deutsche Financial Services Corporation's (DFS) prior perfected security interest in a modular home was superior to the real estate mortgage of Prairie State Bank. On appeal, we must determine the issue of priority.

We conclude that DFS's prior perfected security interest in the modular home takes precedence over Prairie State's real estate mortgage. As a result, we affirm.

Superior Housing, Inc., (SHI) is in the business of selling mobile homes, manufactured homes, and modular homes. In 1991, SHI entered a floor plan financing arrangement with ITT Commercial Finance Corporation (ITT). In 1995, ITT changed its corporate name to Deutsche Financial Services Corporation (DFS). Under the terms of the financing agreement, DFS loaned SHI money to purchase its inventory of homes. Under paragraph 23 of the agreement, SHI granted DFS a security interest in its inventory of homes and the proceeds realized from the sale of the inventory. The agreement also provided that every time SHI sold a home, SHI was required to pay DFS the full amount of any principal balance owed on the home, together with finance charges and other related charges.

On April 15, 1991, DFS properly perfected its security interest by filing a proper UCC-1 financing statement covering SHI's inventory and proceeds with the Kansas Secretary of State. On February 23, 1996, DFS filed a proper UCC-3 for the purpose of continuing its original April 15, 1991, filing.

In August 1999, under a note and mortgage, Prairie State issued SHI a check in the amount of $53,000. The disbursement was for a modular home that was part of SHI's inventory and subject to DFS's security interest. SHI later affixed the modular home to real estate which had been mortgaged to Prairie State. Previously, DFS loaned SHI the sum of $45,157 for the modular home when it was added to SHI's inventory. SHI planned to sell the modular home and real estate together. Instead of paying DFS the balance owed on the modular home, SHI used the $53,000 it received from Prairie State for general operating expenses.

SHI later defaulted under the agreement with DFS. SHI also defaulted on the note held by Prairie State and then filed for bankruptcy. Prairie State is entitled to foreclosure of its mortgage and sale of the real estate.

The trial court determined that DFS had a first and prior lien on the modular home as it was part of SHI's inventory. The trial

court further determined that the lien and its perfected nature continued under K.S.A. 84-9-401(3), even though SHI had affixed the modular home to real estate and the nature of the collateral's use changed to a fixture. The trial court further concluded that Prairie State had a first lien on the underlying real estate and a second lien on the modular home, subordinate to DFS's security interest.

This case was tried to the trial court on stipulated facts; therefore, our standard of review is de novo. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 31, 744 P.2d 840 (1987). This appeal also involves the interpretation of the Uniform Commercial Code. Interpretation of a statute is a question of law, and our standard of review is de novo. See *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

Because DFS's perfected inventory lien attached to the modular home before Prairie State's filing of its real estate mortgage, DFS's security interest in the modular home had priority over Prairie State's mortgage. See K.S.A. 84-9-312(5)(a).

Nevertheless, Prairie State contends that when the modular home was affixed to the real estate, it became a fixture. As a result, it contends that DFS lost its perfected status in the modular home because DFS failed to "re-perfect" through a fixture filing. K.S.A. 84-9-313(1)(a) contains a definition of fixtures:

"[G]oods are 'fixtures' when affixing them to real estate so associates them with the real estate that, in the absence of any agreement or understanding with his . vendor as to the goods, a purchaser of real estate with knowledge of interests of others of record, or in possession, would reasonably consider the goods to have been purchased as part of the real estate."

To perfect a security interest in fixtures, a financing statement covering the fixtures must be filed with the register of deeds' office in the same manner as a mortgage. See K.S.A. 84-9-313(1)(b). As previously stated, Prairie State argues and DFS does not dispute that the modular home became a fixture when it was affixed to the subject real estate. DFS did not make a fixture filing.

The main issue on appeal is whether DFS was required to "re-perfect" its security interest when the modular home was affixed to the real estate and became a fixture. K.S.A. 84-9-401 speaks

directly to this point and does not explicitly require a creditor to make later filings to maintain its perfected status in the event the debtor's use of collateral changes. If the collateral is not moved to another state, but its use changes or it is moved to another county, the original perfection remains effective. K.S.A. 84-9-401(3).

Kansas Comment (6) to K.S.A. 84-9-401 provides:

"This section must be read closely with the definitions of goods in 84-9-109, which defines goods by the primary use to which the debtor puts the goods. For example, a television set used by a doctor in the office would constitute 'equipment' for which a financing statement should be filed with the Kansas Secretary of State. The same television set used at home by the doctor would be 'consumer goods' for which local filing would be required. . . .

. . . .

"Subsection (3) . . . covers the issues of the effect of in-state moves, and provides that a proper filing remains effective, in spite of a change of the debtor's residence, the debtor's place of business, the location of the collateral or the *debtor's use of the collateral.* For example, if a doctor borrows $4,000 to buy a stereo system for her office and some months later moves the system to her home, the original correct central filing covering 'equipment' would continue effective even though the stereo system had since become 'consumer goods' for which local filing would have been required in the first place. This rule will cause some 'secret' liens, so later lenders need to investigate the history of the debtor and collateral." (Emphasis added).

Thus, under K.S.A. 84-9-401(3), it was SHI's original use of the modular home that controlled and not the fact that SHI may have later transformed the inventory into a fixture. Under this clear statutory provision and commentary, DFS's original perfected lien in the modular home as inventory remained effective and DFS was not required to perform a later fixture filing to preserve its perfected lien status.

In addition, analogous Kansas case law is clear that a creditor like DFS is not required to constantly monitor the various uses of its debtor's collateral and make later re-filings in an effort to maintain its original status as a perfected lienholder. In *Beneficial Finance Co. v. Schroeder*, 12 Kan. App. 2d 150, 737 P.2d 52, *rev. denied* 241 Kan. 838 (1987), this court considered a similar issue involving a mobile home. In holding that a fixture filing was not required when the mobile home was affixed to a concrete block foundation, the *Schroeder* court stated:

"As a practical matter, if mobile homes were subject to fixture filing requirements, a secured party with an interest in a mobile home could only maintain priority by making a new fixture filing every time the mobile home is moved. In today's mobile society, a secured party would be under an enormous burden to continuously monitor the whereabouts of the mobile home." 12 Kan. App. 2d at 153.

The *Schroeder* court further pointed out that it was more reasonable to require parties who later obtained an interest in specific real estate to make inquiry concerning a structure located on the property than to require a party with a security interest in a mobile home to maintain constant vigilance regarding the whereabouts and alleged fixture status of the mobile home. 12 Kan. App. 2d at 154.

Although the *Schroeder* case involved a mobile home, we believe the reasoning applied in that case can be applied to the present case. K.S.A. 84-9-401 provides an exclusive method for a floor plan financier to perfect its lien in inventory by filing with the Secretary of State. Forcing DFS to follow its collateral and to refile if the debtor's use of the collateral changed would create an undue burden and would be contrary to the intent of the statute. Further, Prairie State was in a better position to protect its interest. DFS was on file with the Secretary of State as SHI's creditor. Prairie State could have checked with the Secretary of State and issued the check made payable to SHI and DFS jointly.

Next, Prairie State maintains that SHI was a buyer in the ordinary course of business. Under K.S.A. 84-9-307(1), a buyer in the ordinary course of business (defined in K.S.A. 84-1-201[9] as "a person who in good faith and without knowledge that the sale to the person is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . ") . . . "takes free of a security interest created by such buyer's seller even though the security interest is perfected and even though the buyer knows of its existence." To gain the benefit of K.S.A. 84-9-307(1), the buyer in the ordinary course of business must act in good faith. Here, SHI knew that the supposed sale (removal of the modular home from SHI's inventory and its affixation of the modular home to the realty) was clearly unusual. For this to be a sale, SHI would

have been both a seller and a buyer in the same transaction. Because of the unusual way this supposed sale was conducted, we determine that SHI was not a buyer in ordinary course of the modular home. See *Merchants & Planters Bk. v. Phoenix Hous.*, 729 S.W.2d 433 (Ark. App. 1987) (Evidence existed that the sale was conducted in an unusual manner; therefore, the floor plan financier took priority over the financier of the buyer.).

Finally, Prairie State asserts that its mortgage lien on the modular home was a purchase money security interest, which gave Prairie State priority even though it perfected its security interest later than DFS. K.S.A. 84-9-312(4). Prairie State's lien as to the modular home was not a purchase money security interest as defined by K.S.A. 84-9-107, which states:

"A security interest is a 'purchase money security interest' to the extent that it is (a) taken or retained by the seller of the collateral to secure all or part of its price; or (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used."

Prairie State maintains that it has a purchase money security interest under the second prong (K.S.A. 84-9-107([b]) of the definition. Prairie State asserts in its brief that "it gave value in the form of the loan to enable SHI to acquire rights in the collateral." As a direct lender, Prairie State must prove that the loan proceeds were given to enable SHI to acquire rights in the modular home and that the proceeds were in fact so used. Here, when Prairie State advanced funds to SHI, SHI had already taken possession of the modular home and had financed its purchase under its floor plan arrangement with DFS. Furthermore, the record indicates that the $53,000 that SHI received from Prairie State to acquire the modular home was later used by SHI for general operating expenses. Because Prairie State's loan proceeds were not used to enable SHI to acquire the modular home, we determine that Prairie State had no purchase money security interest in the modular home. As a result, Prairie State's argument fails.

Affirmed.